**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

THE HARTFORD INSURANCE COMPANY
OF THE MIDWEST,

          Plaintiff,

v.                                  CIVIL ACTION NO. 5:10-cv-00320

ERIE INSURANCE PROPERTY & CASUALTY
COMPANY,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed Defendant's Motion for Summary Judgment on the Limited Issue of the Statute of Limitations [Docket 21], Plaintiff's Motion for Leave to File Sur-Reply Memorandum in Opposition to Defendant's Reply Brief [Docket 28], Defendant's Motion for Summary Judgment on the Merits [Docket 34] and Plaintiff's Motion for Summary Judgment [Docket 31], as well as the memoranda in support and in opposition.

I.

This matter concerns damages arising from an automobile accident that occurred on September 22, 2007, between Samuel Adkins and Julie England. The Hartford Insurance Company of the Midwest ("Hartford") insured John and Gwendolyn Grant as named insureds under a standard personal auto policy covering their Buick Le Sabre, in effect at the time of the accident. The policy provided a liability coverage limit of $20,000 for bodily injury and $10,000 for property damage.

(Compl. ¶ 6.) Erie Insurance Property & Casualty Company ("Erie") insured Samuel Adkins under a personal auto policy with coverage for collision damage, medical payments, and uninsured motorists ("UM").

On the morning of September 22, 2007, the Grants left their Buick Le Sabre unlocked in their driveway with the keys in the ignition and the engine running. Julie England, who the Grants did not know, took that opportunity to steal the Grants' Buick. The police discovered England two or three miles from the Grants' house and a police chase ensued. (Hartford Cl. File 128.) Police clocked England at 120 miles per hour. (Hartford Cl. File 128.) The chase culminated when England ran a red light and crashed into a vehicle being operated by Samuel Adkins. Adkins sustained injuries and damage to his vehicle. On October 3, 2007, Adkins sought payment from Erie under his UM coverage because England did not have insurance. (Docket 22 at 2.) He additionally sought payment under his medical and collision coverage. (Compl. ¶ 12.) Also in October 2007, Adkins, through his attorney, sent a letter to Hartford making a claim for his damages. Hartford interpreted that claim to be against the driver of the Grants' vehicle, England, and denied coverage because England was not a permissive user of the Buick. (Compl. ¶ 10.)

On December 4, 2007, Erie learned, for the first time, that the Grants had left the keys in their Buick and the engine running prior to its theft. (Docket 22 at 2.) Upon learning that information, Erie sent Hartford a letter seeking contribution for Adkins' property damage on the grounds that the Grants were at fault under West Virginia Code Section 17C-14-1, which prohibits an owner from leaving his car running while unattended. (Docket 22 at 2.) Hartford reconsidered its earlier denial based on Erie's contentions. (Compl. ¶ 14.)

Prior to June 2008, Erie settled Adkins' claims and paid him $29,130 for collision damage to his vehicle, the $10,000 limit of his medical payment coverage, and $62,500 under his UM coverage. (Compl. ¶ 12; Docket 22 at 2-3.) On June 25, 2008, Adkins signed a release, specifically releasing Erie and Hartford from all future claims and subrogation claims. Hartford was unaware of Erie's settlement with Adkins and Adkins' release.

Erie, still seeking payment from Hartford by way of a subrogation claim, filed three arbitration claims with Arbitration Forums, Inc., in August 2008. Both Erie and Hartford are signatories to arbitration agreements under the auspices of Arbitration Forums. The first claim was in the amount of $10,000 arising out of the payment made by Erie to Adkins for his medical expenses. The second claim was in the amount of $62,500, reflecting the amount Adkins recovered from Erie under his UM coverage. Hartford was unaware at the time the arbitration claim was filed of the origin of this $62,500 sum.[1] The third claim was in the amount of $29,130, the amount Adkins recovered from Erie under his collision damage coverage for damage to his vehicle. On the arbitration claim applications, Erie indicated that it would accept Hartford's policy limits as awards. (Docket 22 at 3.) Erie provided supporting documents with these claims including the police report, medical bills, proof of payment, the release and a weather report. (Docket 22 at 3.)

At the time Erie filed the arbitration claims, Hartford was still considering the coverage issue. (Docket 22 at 3.) Hartford received notice of the three claims in late August 2008. According to Hartford's claim file, Hartford recognized that it would have a defense in this case, but

---

[1] Hartford's claim file indicates that on August 29, 2008, it "[r]eceived correspondence from Erie Insurance advising that their investigation reveals our insured is responsible for med. expenses resulting from accident. Amount paid is $10,000, but they have as $72,500." (Hartford Cl. File. 114.)

3

because the policy limits were minimal it decided to attempt resolution. (Hartford Cl. File 110.) On September 16, 2008, Hartford informed Erie that it was willing to pay $10,000 for the property damage and that its bodily injury policy limit was $20,000. (Docket 22 at 3.) In October 2008, Hartford contacted Adkins' attorney, Anthony Salvatore, to offer his client $20,000, their bodily injury policy limit, to resolve his claim.

The parties' versions of the facts diverge at this point. Hartford asserts that it paid Adkins, through his attorney, Anthony Salvatore, the $20,000 bodily injury policy limit on November 22, 2008, in exchange for a release. At this point, Hartford was still unaware of the first release, and Mr. Salvatore accepted this settlement on behalf of his client without informing Hartford that he had settled with Erie and signed a release. Hartford further states that it released payment of $10,000 to Erie to settle the property damage claim on December 8, 2008. (Docket 32 at 4-5.) Erie asserts that Hartford paid Adkins $10,000 for his property damage in exchange for a release, and states that "It also appears that Plaintiff's check for $10,000 should have been repaid to Defendant, rather than given as an additional sum to Adkins."[2] (Docket 22 at 4.)

Regardless, Hartford's intent was to fully settle Erie's and Adkins' claims for its policy limits. Erie states that after it received proof that Hartford paid its $10,000 limits for the property damage, it wrote to Arbitration Forums on December 16, 2008, requesting that the property damage claim be withdrawn, referencing only the docket number for the property damage claim. (Docket 22 at 4.) Hartford's claim file reflects that Hartford received the "December 16, 2008, correspondence from Erie to Arbit[ration] Forums advising 'We have reached a settlement, please

---

[2]However, Erie's claim file indicates that it did receive a payment of $10,000. (Erie Cl. File 545) ("Reviewed w/H54U and appears you . . . have rcv'd pd of $10,000.00 limits.")

withdraw the application and mark docket discontinued.'" (Hartford Cl. File 106.) According to Hartford, this correspondence advised Arbitration Forums that "a settlement had been reached, and to please withdraw the auto damage subrogation claim." (Docket 23 at 3.)

With respect to the withdrawal of the one arbitration claim, Erie remarks, "Apparently, Plaintiff's adjuster relied on the overly-broad language of the Release and ignored both the docket number listed and the total amount of the settlement (i.e. for property damage only)." (Docket 22 at 4.) Hartford, on the other hand, states that an Erie representative, Sandra Barker or Lois Burton, agreed with its own representative, Georgia Masterson, that "by virtue of the $20,000 settlement and the $10,000 property damage payment, Hartford's coverage limits would be exhausted, and the arbitration proceedings should be withdrawn."[3] (Docket 32 at 3.) Pursuant to Erie's withdrawal of the property damage claim, Arbitration Forums withdrew only that claim for $29,130 on January 12, 2009, and the other two arbitration claims for $10,000 and $62,500 remained pending.

On January 15, 2009, Arbitration Forums conducted an arbitration hearing at which Hartford was not present. It awarded Erie the full awards of $62,500 for the UM coverage paid to Adkins and $10,000 in medical payments paid to Adkins. Subsequently, Erie wrote a demand letter to Hartford

---

[3]It appears from Hartford's claim file that Sandra Barker corresponded with Hartford's representative when Lois Burton, who was handling the claim for Erie, was unavailable. An entry dated February 16, 2009, states, "Called Sandra Barker from Erie this date and advised of release and she apologizes as appears Lois Burton had attempted to close this arbit and went through anyway." (Hartford Cl. File 108.) There is a reference in Hartford's claim file to a conversation with Lois Burton that possibly reflects Hartford's understanding that the arbitration filings would be withdrawn upon payment of the $10,000, but this entry is incomplete and does not have a date. (Hartford Cl. File 110.) Masterson's affidavit submitted by Hartford asserts that that was her understanding. An entry in Erie's claim file dated April 23, 2009, documents a conversation with Masterson wherein Masterson explained her February 16, 2009, conversation with Sandra Barker. The entry states, "Barker not aware of other two arb awards due [medical payments] for $10,000.00 & special for $62,500.00." (Erie Cl. File 545.)

demanding the payment of the arbitration awards in the amount of $72,500, plus attorneys fees in the amount of $47,850. (Docket 32 at 5.) Hartford's claim file states on February 1, 2008, "Received arbitration result. Note that apparently carrier neglected to have dismissed as we have release from Erie." (Hartford Cl. File 109.) On April 23, 2009, Hartford received a letter from Arbitration Forums advising it that the awards have remained unpaid. (Hartford Cl. File 108.) During this time Hartford appeared to be under the impression that Erie mistakenly did not withdraw all three of the arbitration claims. The portion of Hartford's claim file submitted to the Court reflects that it was communicating with Erie through May 2009 regarding their misunderstanding of Erie's intent to withdraw all arbitration claims after receiving Hartford's $10,000 payment representing property damage. (Hartford Cl. File 106.)

Hartford filed its Complaint for Declaratory Action on March 12, 2010. In its complaint, Hartford asserts that Erie's subrogation claims were not properly arbitrable to begin with because they were outside the scope of their arbitration agreement. (Compl. ¶ 31-32.) Hartford also asserts that enforcement of the arbitration award is inconsistent with commercial good faith and reasonableness. (Compl. Count II.) Hartford seeks an entry of judgment that the arbitration awards obtained by Erie against Hartford through Arbitration Forums are null, void, of no legal effect and are unenforceable. (Compl. 12.)

II.

On December 29, 2010, Erie filed its Motion for Summary Judgment on the Limited Issue of the Statute of Limitations [Docket 21] and supporting memorandum [Docket 22]. In it, Erie sets forth that arbitrators ruled in its favor and against Hartford on January 15, 2009, in two related

proceedings in the total amount of $72,500. (Docket 22 at 1.) Erie contends that Hartford's complaint seeks to vacate an arbitration award and that it is subject to the statute of limitations under the Federal Arbitration Act ("FAA") for vacating an award.[4] (Docket 22 at 4.) Section 10 of the FAA sets forth the circumstances under which a court may vacate an arbitration award:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--
>
> > (1) where the award was procured by corruption, fraud, or undue means;
> >
> > (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> >
> > (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> >
> > (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Erie asserts that under the FAA a party only has three months to challenge an arbitration award, and because Hartford did not file this action until fourteen months after the award was issued, its claim is barred by the statute of limitations.[5] (Docket 22 at 2).

Hartford responded on January 18, 2011 [Docket 23]. Hartford contends that it is requesting a declaratory judgment on the basis that the matters in controversy were not proper subjects of

---

[4] Parties filed a Joint Stipulation [Docket 13] on November 22, 2010, stipulating that the arbitration agreements signed by Erie and Hartford are governed by the FAA.

[5] Section 12 of the FAA states, "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12.

arbitration, as opposed to a vacation of the arbitration award, and thus, the three month limitations period is inapplicable to this case. (Docket 23 at 1.) Hartford contends that the three month statute of limitations in the FAA is limited to specific grounds and is to be applied only when a party is seeking to vacate an award based on a defect in the arbitration proceeding. (Docket 23 at 7.) Hartford asserts that its request for a declaratory judgment is a request for equitable relief, which is distinct from a motion to vacate under those enumerated grounds in the FAA, and the Court may entertain this action pursuant to its powers under the Declaratory Judgment Act. (Docket 23 at 8.) Hartford maintains in its response that the claims between it and Erie were not arbitrable in the first place because Erie's subrogation claims that underlie the arbitration awards were basically tort claims for alleged negligence against the Grants. Hartford states that these claims were not subject to the parties' arbitration agreement. Hartford further asserts that the arbitration agreement excluded Erie's claims because Hartford had exhausted its policy limits prior to the arbitration awards. (Docket 23 at 10-11.)

On January 27, 2011, Erie replied [Docket 25]. In its reply, Erie challenges Hartford's contention that its request to void the arbitration awards is distinct from a request to vacate the award. (Docket 25 at 1.) Erie asserts that the practical effect of Hartford's claim is to permit Hartford to not pay the arbitration award, and thus it must be viewed as a motion to vacate the award. (Docket 25 at 2.)

Hartford filed its Motion to File Sur-Reply on February 10, 2011. In support, Hartford stated that Erie incorrectly characterized Hartford's argument that the claims were not arbitrable from the outset as a claim under 9 U.S.C. § 10(a)(4) that the arbitrators exceeded their powers, and that a sur-reply was warranted to respond to Erie's mistaken contention. (Docket 28 at 2.) Hartford attached

8

its sur-reply as an exhibit. In it, Hartford engages for the first time in a discussion of whether the issue of arbitrability is an issue for the arbitrator or for the court to decide. (Docket 28-1 at 2.) Hartford cites authority for its contention that when the parties have not clearly agreed to arbitrate the issue of arbitrability, this "gateway" issue is solely within the province of the court to decide. (Docket 28-1 at 3.) Hartford further asserts that because arbitrability is an issue for the court and is a gateway issue, it cannot be construed as a challenge to the arbitrator's authority addressed in 9 U.S.C. § 10(a)(4). Erie responded in opposition to Hartford's Motion to File Sur-Reply on February 15, 2011. The Court now **ORDERS** that Hartford's Motion to File Sur-Reply [Docket 28] be **GRANTED**.

III.

The well established standard in consideration of a motion for summary judgment is that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A "material fact" is a fact that might affect the outcome of a party's case. *See Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir.2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Id*. The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to

judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the non-moving party. *North American Precast, Inc. v. General Cas. Co. of Wis.*, Civil No.02:04-1306, 2008 WL 906334, *3 (4th Cir. Mar. 31, 2008). The non-moving party must satisfy their burden of proof by offering more than a mere "scintilla of evidence" in support of their position. *Anderson*, 477 U.S. at 252. If the non-moving party fails to make a showing sufficient to establish the existence of an essential element, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. Because it appears to the Court, and the parties agree, that there exist no material issues of fact, this case is ripe for decision on summery judgment.

IV.

Hartford is challenging what it refers to as a "gateway" issue to arbitration. However, this challenge comes long after the gateway has been traversed. Hartford first received notice that Erie had filed three arbitration claims against it in August 2008. In December 2008, Hartford received correspondence from Erie to Arbitration Forums reflecting Erie's intent to withdraw only one of the claims. There is no evidence in the record to suggest, nor does Hartford contend, that it did not receive notice of the January 15, 2009, arbitration hearings. Rather, Hartford's briefs and the record suggest that Hartford was under the mistaken impression that all three claims had been, or would be, withdrawn by Erie. Hartford relied on this impression rather than appearing at the hearings

despite the August 2008 notice of three claims pending against it and the December 2008 notice of only one claim being withdrawn. The questions before the Court are whether a party may wait until the completion of arbitration proceedings to challenge the "gateway" issue of arbitrability, and after an award has been issued whether any challenge to the propriety of the arbitration must be analyzed under 9 U.S.C. § 10 as a motion to vacate the award.

The caselaw on which Hartford relies, including *Rent-a-Center West, Inc. v. Jackson*, 130 S.Ct. 2772 (2010), involve challenges to arbitrability of claims at the actual outset of the claims, or challenges to enjoin arbitration from taking place. Hartford has presented no authority for sustaining a challenge to arbitrability after arbitration proceedings have been completed and an award has been issued.

In *Shank/Balfour Beatty v. Intern'l Brotherhood of Electrical Workers Local 99*, 497 F.3d 83 (1st Cir. 2007), the First Circuit found that the appellant "did not waive its right to challenge arbitrability by participating in the hearing on the merits after it raised the arbitrability issues before the arbitrator and the arbitrator ruled against [the appellant]." *Id*. at 90, n. 2. Similarly, other courts have found challenges to the arbitrability of a claim occurring after arbitration has taken place not waived when arbitrability was objected to at the outset of the claim. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) ("Unlike in the arbitration cases where we have found waiver, [Plaintiff] forcefully objected to arbitrability at the outset of the dispute, never withdrew that objection, and did not proceed to arbitration on the merits of the contract claim. Thus, she did not waive her right to challenge the arbitrability of the dispute.").

The Court of Appeals for the Third Circuit discussed the timing of an arbitrability challenge and held that a party may make the challenge after participating in the arbitration, as long as the objection has been raised at arbitration:

> We repeatedly have held under the FAA, including in our opinion in *First Options* in which the Supreme Court affirmed our judgment, that a party does not waive its objection to arbitrability where it raises that objection in arbitration: "A party does not have to try to enjoin or stay an arbitration proceeding in order to preserve its objection to jurisdiction.... A jurisdictional objection, once stated, remains preserved for judicial review absent a clear and unequivocal waiver.... Therefore, where a party objects to arbitrability but nevertheless participates in the arbitration proceedings, waiver of the challenge to arbitral jurisdiction will not be inferred." *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1510 (3d Cir.1994), aff'd, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985; *see also Pa. Power Co. v. Local Union # 272, IBEW*, 886 F.2d 46, 50 (3d Cir.1989).

*China Minmetals Materials Import and Export Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003); *see also Solvay Pharmaceuticals, Inc. v. Duramed Pharmaceuticals, Inc.*. 442 F.3d 471, 478 n.6 (6th Cir. 2006) (noting that a challenge to arbitrability may manifest itself as an attack on an arbitration award under 9 U.S.C. § 10(a) when the challenge occurs after arbitration, but "[w]hen the challenge occurs prior to the arbitration, there is no question that the issue is one of arbitrability, for no award yet exists to be challenged."); *Local Union No. 36, Sheet Metal Workers' v. Atlas Air Conditioning*, 926 F.2d 770, 771-72 (8th Cir.1991) (describing three methods which a party may have employed to challenge an arbitrator's authority: "[The party] could have [1] objected to the arbitrators' authority, refused to argue the arbitrability issue, and proceeded to the merits of the agreement . . . [2] *sought declaratory or injunctive relief from a court prior to commencement of arbitration* . . . [or 3] notified [the arbitrators] that it refused to arbitrate altogether.") (emphasis added).

These cases state the issue in the affirmative, in that they stand for the proposition that a party does not waive its right to object to the arbitrability of a claim as long as that objection has been preserved or the challenge occurs prior to arbitration. In this case, the inverse may be inferred: a party waives its right to challenge the arbitrability of a claim when it brings the challenge for the first time after the arbitration award against it has been issued. Although the Court is cognizant that there were internal problems and misunderstandings underlying Hartford's actions in failing to object to or participate in any way in the arbitration proceedings, that does not excuse the fact that Hartford was informed on at least two occasions that three claims were proceeding against it, and only one had been withdrawn. Allowing Hartford to proclaim an arbitrability challenge now, fourteen months after arbitration proceedings began and ended without objection, essentially provides it with an indirect path to evoke judicial review of an unfavorable arbitration award, where direct paths to judicial review are limited and narrow. Such a result is contrary to Congressional intent with respect to the FAA, which "plac[es] arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

Because Hartford may not challenge the arbitrability of Erie's claims, *primitus*, at this juncture, the Court construes its claim as an attack on the scope of the arbitration award and subject to the three month statute of limitations under 9 U.S.C. § 12. *See MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849 (4th Cir. 2010) (analyzing whether arbitration panel exceeded the scope of its powers in issuing the damages award under vacation grounds in 9 U.S.C. § 10(a)). Inasmuch as Hartford initiated this action challenging the arbitration award as outside the scope of the arbitration agreement more than three months after the arbitration award was issued, its claim

is barred by the statute of limitations.  Further, inasmuch as the Court has resolved this matter on statute of limitation grounds, it need not address the other two pending motions for summary judgment.

Accordingly, the Court **ORDERS** that Defendant's Motion for Summary Judgment on the Limited Issue of the Statute of Limitations [Docket 21] be **GRANTED** and that this case be **DISMISSED** with prejudice.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:     May 17, 2011

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA